IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| C.M.S., | ) | |
| | ) | Case No. 3:25-cv-00216 |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Magistrate Judge Kezia O. L. Taylor |
| | ) | |
| LEONARD ODDO, et al. | ) | |
| | ) | |
| Respondents. | ) | |

### MEMORANDUM OPINION

For the reasons that follow, the Petition for Writ of Habeas Corpus, ECF No. 1, will be granted to the extent Petitioner is requesting release from custody, subject to appropriate conditions in accordance with 8 U.S.C. § 1231(a)(3). To the extent such relief is requested, Petitioner's counsel may file a motion seeking costs and attorneys' fees.

**A. Background**

Pending before the Court is a Petition for Writ of Habeas Corpus ("Petition") filed by Petitioner C.M.S.[1] ("Petitioner") pursuant to 28 U.S.C. § 2241. ECF No. 1. Petitioner is a 34-year-old native and citizen of Mexico who has lived in the United States since he was seven years old.[2] *Id*. ¶¶ 1, 41. On January 22, 2024, ICE officers executed a warrant authorizing

---

[1] Petitioner has been granted leave to proceed under a pseudonym. *See* ECF No. 4.

[2] According to the Petition, Petitioner came to the United States in 1999. ECF No. 1 ¶ 42. He was separated from his mother during the journey and held at a "safe house" in California for approximately two months until he could be reunified with her. *Id*. Petitioner avers that during that time he was "repeatedly trafficked for sex," which resulted in severe trauma and long-lasting effects on his mental health. *Id*. After reuniting with his mother, the two made their way to New York City. *Id*. ¶ 43. He claims that shortly after he arrived, he experienced panic attacks, "began to have flashbacks and nightmares" and "struggled to concentrate in school," and he "began to self-medicate with drugs at a young age in order to 'escape' his trauma." *Id*. He was arrested for the first time in March 2022 and agreed to a plea of unlawful imprisonment in the second degree. *Id*. ¶ 44. While he was detained pending trial in New York City, he was first

Petitioner's arrest and served him with a Notice to Appear, which charged his removability under 8 U.S.C. § 1182(a)(6)(A)(i), as an alien being present in the United States without being admitted or paroled. ECF No. 13 at 1. On January 6, 2025, an Immigration Judge found that Petitioner was removable as charged but granted him withholding of removal to Mexico on the basis that he would be persecuted if he returned. *Id*. Neither ICE nor Petitioner appealed the Immigration Judge's order to the Board of Immigration Appeals, which resulted in an administratively final order. *Id*. As of the date of this writing, Petitioner has been detained in ICE custody for approximately 22 months, with more than 10 of those months spent in detention pursuant to 8 U.S.C. § 1231(a), which provides for the detention and removal of aliens with final orders of removal.

In his Petition, Petitioner argues that he should no longer be detained because there is no significant likelihood of his removal to a third country in the reasonably foreseeable future, and he requests, among other forms of relief, that the Court order his immediate release. The Government filed a response in opposition to the Petition, ECF No. 13, and Petitioner filed a reply thereto, ECF No. 17.

**B. Jurisdiction**

Jurisdiction exists under 28 U.S.C. § 2254 "for statutory and constitutional challenges to post-removal-period-detention." *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001); *see also Roe v. Oddo*, No. 3:25-cv-128, 2025 WL 1892445, at *4 (W.D. Pa. July 9, 2025) (holding that 8 U.S.C.

---

diagnosed with post-traumatic stress disorder ("PTSD"), which "manifested itself through severe panic attacks and attempts at self-harm." *Id*. ¶¶ 45-46. Upon his release from detention, he received mental health treatment in a community setting for the first time. *Id*. ¶ 47. He "stayed off of drugs" and "was wholly compliant with his probation requirements in the eight months before he was detained by ICE in January 2024." *Id*. ¶¶ 47-48.

§ 1252(g) did not strip the court of jurisdiction since it was "examining the contest of Petitioner's detention" and not "reviewing Petitioner's removal order.").

The Supreme Court of the United States has explained that "the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Habeas relief applies to petitioners seeking relief from executive detention but not to petitioners seeking to remain in the United States. *See Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 116-120 (2020). The Court has jurisdiction in this case because Petitioner is contesting his detention and the violation of his due process rights, not the execution of his order of removal.

### C. Discussion

The authority of ICE to detain noncitizens under federal law derives from 8 U.S.C. § 1231, which directs the Attorney General of the United States to affect the removal of any noncitizen from this country within 90 days of any final order of removal. 8 U.S.C. § 1231(a). That said, once the time passes and after "removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute[,]" and the noncitizen must be released. *Zadvydas*, 533 U.S. at 699. "Indefinite, perhaps permanent, detention" is not authorized. *Id*.

In *Zadvydas*, the Supreme Court interpreted § 1231(a)(6) to limit postremoval detention to a period "reasonably necessary to bring about that alien's removal from the United States." 533 U.S. at 689. The Court found that postremoval detention for six months is "presumptively

reasonable," but beyond those six months, if removal is no longer reasonably foreseeable, continued detention becomes unauthorized.[3] *Id*. at 699.

That said, the expiration of six months does not entitle every noncitizen to be released. Rather, the government may continue detention until no significant likelihood of removal in the reasonably foreseeable future exists. *Id*. at 701. Accordingly, under *Zadvydas* the noncitizen has the initial burden to provide "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future[.]" *Id*. at 701. Once the noncitizen provides such "good reason," the burden shifts to the government to rebut the noncitizen's allegations. *Id*. No clear guidance exists to aid courts in making the determination as to whether a significant likelihood of removal in the reasonably foreseeable future exists. Ultimately, determining what the "reasonably foreseeable future" is requires a factual determination to be undertaken by the habeas court looking into the circumstances and detention length of each individual petitioner. But, the reasonableness of the detention shrinks as the time of post-removal confinement grows. *Zadvydas*, 533 U.S. at 701.

At the time of this writing, Petitioner has been detained pursuant to § 1231(a) for more than ten months, outside the "presumptively" reasonable time period, and, as a result, *Zadvydas* applies. Under *Zadvydas*, once a petitioner has articulated a "good reason to believe" that removal is unlikely in the reasonably foreseeable future, the burden shifts to the government to rebut that showing. Petitioner has offered such articulation here. As noted in the Petition,

---

[3] To comply with *Zadvydas*, DHS promulgated regulations that establish a series of processes to address the concerns discussed in that decision and to determine whether a noncitizen should be released from custody after the expiration of the 90-day removal period. *See* 8 C.F.R. §§ 241.4 and 241.13. These regulations provide for administrative custody reviews at 90 days, 180 days, and one year. 8 C.F.R. § 241.14(k). They do not provide for a bond hearing before an immigration judge.

Petitioner's removal to Mexico is "definitely prohibited" because he was granted withholding of removal to Mexico and ICE did not appeal.  ECF No. 1 ¶ 89.  During the ten months he has spent detained since he was granted withholding of removal, Petitioner has affirmatively requested his release from ICE.  *See* ECF No. 1 at ¶¶ 68-84.  On March 28, 2025, he received a message from an ICE officer stating:

> Release recommended as subject was granted Withholding and no alternative country of removal has been identified.  No SLRRFF [Significant Likelihood of Removal in the Reasonably Foreseeable Future] exists at this time.

ECF No. 17-1 at 1.  Notwithstanding, on April 3, 2025, Petitioner was issued a "Decision to Continue Detention" in his 90-day post-order custody review which stated that ICE had decided to continue to detain him because he had "not demonstrated that . . . he will not [p]ose a danger to the community . . . or [p]ose a significant risk of flight pending [his] removal from the United States."  ECF No. 1 ¶ 75.  Although Petitioner formally requested and received an interview as part of his post-order custody review process, he avers that ICE did not ask him any questions indicative to dangerousness and he never received a response from his interview.  *Id*. ¶ 78.

While Petitioner acknowledges that ICE can seek removal to alternate or third countries, he states that he "has already expressed fear of persecution or torture in several third countries" and he "is not likely a candidate for acceptance by a country to which he has no ties."  ECF No. 17 at 11.  Additionally, he points to ICE's "very low rate of removing noncitizens" who have been granted withholding relief, specifically noting publicly available data from September 2023 to July 2025 which indicates that ICE has removed a total of only eight noncitizens who had been granted withholding or CAT relief to alternative countries.  *Id*. at 11-12.  According to Petitioner, "[t]his is a fraction of the total number of noncitizens who are granted withholding

5

relief each year," and "supports the general inference that removal for this particular class of detainees is substantially more difficult." *Id*. at 12 (internal quotation omitted). He also maintains that this is "in line with ICE's longstanding policy in favor of releasing people granted withholding of removal." *Id*. (citing ECF No. 1 ¶¶ 28-33). The Court concludes that this is enough to find that Petitioner has met his burden.

The question then becomes whether the Government has come forward with sufficient evidence to "rebut that showing." *Zadvydas*, 533 U.S. at 701. "A remote possibility of an eventual removal is not analogous to a significant likelihood that removal will occur in the reasonably foreseeable future." *Escalante*, 2025 WL 2206113, at *4 (quoting *Kane v. Mukasey*, No. CV B-08-037, 2008 WL 11393137, at *5 (S.D. Tex. Aug. 21, 2008), *superseded by*, 2008 WL 11393094 (S.D. Tex. Sept. 12, 2008) (a new report and recommendation was entered denying the petition as moot because petitioner was deported prior to the order adopting the R&R), adopted by 2008 WL 11393148 (S.D. Tex. Oct. 7, 2008)).

As it currently stands, the record before the Court leaves substantial uncertainty regarding whether there is a "significant likelihood" that Petitioner will be removed to a third country in the "reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. Here, the Government submits that Petitioner's removal from the United States is imminent once travel documents have been approved. In support of this statement, the Government has provided evidence that ICE has submitted several requests to third countries concerning Petitioner's removal. ECF No. 13 at 5. However, according to the Declaration of Deportation Officer John Foster, third country removal requests were not sent until April 31, 2025, over three months after Petitioner was granted withholding of removal, and while those requests were sent to the consulates of Honduras, Costa

6

Rica and El Salvador, the record contains no additional information on the status of the requests. ECF No. 13-2. ¶ 8. Officer Foster also states that while Enforcement and Removal Operations ("ERO") followed up with HQ Removals and International Operations Division ("HQ-RIO") on August 8, 2025, September 11, 2025, and October 15, 2025, to determine if any third country agreements have been reached, there was no update as of October 23, 2025, the date of his Declaration. *Id*. ¶ 10.

The Government has not reported that it has made any significant progress in carrying out Petitioner's removal and Petitioner has presented evidence that none of the eight noncitizens who were granted withholding or CAT relief and removed to alternative countries from September 2023 to July 2025 were removed to Honduras, Costa Rica or El Salvador, the only three countries where ICE has sent removal requests for Petitioner. The Court therefore finds that under *Zadvydas*, Petitioner has provided "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," and the Government has not "respond[ed] with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701.

For the aforementioned reasons, the Petition will be granted insofar as the writ will be issued directing Petitioner's release from custody, subject to appropriate conditions in accordance with 8 U.S.C. § 1231(a)(3).[4]  A separate order will be issued.

Dated:  December 1, 2025.

/s/ Kezia O. L. Taylor
Kezia O. L. Taylor
United States Magistrate Judge

Cc:   Counsel of record
      (Via CM/ECF electronic mail)

---

[4] Given this disposition, the Court declines to discuss the applicability of *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203 (3d Cir. 2020), and *Mathews v. Eldridge*, 424 U.S. 310 (1976), to Petitioner's detention, which are alternative bases for relief argued for in the Petition.  Additionally, the Court will note for the benefit of the parties that the appropriate remedy upon issuance of the writ in this case is an order directing Petitioner's release subject to appropriate conditions, and not a bond hearing, since continued detention is no longer authorized by statute.  *See Zadvydas*, 533 U.S. at 699-700.